UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

COLONY INSURANCE COMPANY,

    Plaintiff,

v.

HAROLD KUEHN, *et al*.,

    Defendants.

Case No. 2:10-CV-01943-KJD-GWF

**ORDER**

Before the Court is Plaintiff Colony Insurance Company's Motion for Summary Judgment (#82). Defendants Joe Fallini and Susan Fallini have filed an Opposition (#84) to which Plaintiff has filed a Reply (#88). Defendant Thomas Gibson also filed an opposition (#87) to which Defendant Gibson & Kuehn, LLP joined and to which Plaintiff has filed a Reply (#91).

I. Background

    A. Underlying Lawsuits

The parties do not dispute the facts relevant to this motion. Plaintiff Colony Insurance Company ("Colony") seeks a declaration that an insurance policy (the "Policy") issued to Gibson & Kuehn, LLP ("G&K") does not provide coverage for a pending legal malpractice lawsuit. The lawsuit, captioned as Susan Fallini, et al. v. Harold Kuehn, et al., Case no. CV 10-02551, was filed in

Washoe County, Nevada (the "Fallini" lawsuit). The Fallini lawsuit is a malpractice complaint based on the legal representation of the Fallinis in another suit, Estate of Michael David Adams v. Susan Fallini, No. CV24539 filed in Nye County, Nevada (the "Adams" lawsuit).

In early 2007, Fallini retained Defendants Kuehn and G&K to represent her in the Adams lawsuit. Adams' estate alleged that he was killed when his car struck a cow owned by Mrs. Fallini. The plaintiff in the Adams lawsuit served written discovery on Defendants Kuehn and G&K as counsel for Mrs. Fallini on October 31, 2007. Keuhn and G&K never responded in any way to this discovery and accordingly, certain requests for admission were deemed admitted. Keuhn and G&K never attempted to redress this issue.

On May 14, 2008, the plaintiff in the Adams lawsuit filed a motion for summary judgment based on the admitted requests for admission. This motion argued that Fallini was liable for the death of Adams. Keuhn and G&K failed to file any opposition to this motion and on July 30, 2008, the court in the Adams lawsuit entered summary judgment against Fallini on liability based on the facts that were deemed admitted by Fallini.

On October 23, 2008, plaintiffs in the Adams lawsuit also successfully won summary judgment on Fallini's counterclaim because Kuehn and G&K failed to respond. There is no dispute that each of these pleadings and judgments were served on Kuehn and G&K.

In July 2008, the Adams plaintiffs served additional discovery on Kuehn and G&K relating to insurance coverage. After receiving no response, the Adams plaintiffs filed a motion to compel which ultimately resulted in a series of hearings and motions related to Kuehn's failure to comply with the court's orders. When he finally appeared, Kuehn stated that he was to blame for each failure to comply. On November 4, 2009, the court struck Fallini's answer and counterclaim in the Adams case and held Keuhn in contempt of court.

Fallini did not find out that her case was still pending until May, 2010 because Kehun told her that it settled. On August 24, 2010, Fallini and her husband filed the Fallini lawsuit against Kuehn, Gibson and G&K. This action was filed in November, 2010.

2

Case 2:10-cv-01943-KJD-GWF   Document 95   Filed 09/25/12   Page 3 of 9

B. Insurance Policy

On March 23, 2009, G&K submitted an application requesting that Colony issue the Colony Policy. The application required G&K to truthfully answer the following questions:

> 8. Provide details of any changes and developments in any previously reported claims and/or circumstances. In addition and after inquiry with each person as appropriate:
>
> > a. Have any claims or suits been made in the last seven years against the firm or any past or present Owners, Partners, Shareholders, Corporate Officers, Associates, Employed Lawyers, Employees or its predecessors in business that have not been reported and accepted under the firm's Professional Liability Insurance? [ ] No [ ] Yes
> >
> > b. Are any persons in the firm aware of any circumstances, allegations, tolling agreements or contentions as to any incident which may result in a claim being made against the firm or any of its past or present Owners, Partners, Shareholders, Corporate Officers, Associates, Employed Layers [sic], Employees or its predecessors in business that have not been reported and accepted under the firm's Professional Liability Insurance? [ ] No [ ] Yes
>
> If "yes," for a. and b. above, please complete a claim supplement for each matter.

The application also stated:

> The undersigned declares that the statements set forth herein are true. The undersigned agrees that if the information of this application changes between the date of the application and the effective date of the insurance he/she (undersigned) will immediately notify the underwriters of such changes, and the underwriters may withdraw or modify any outstanding quotations and/or authorizations or agreements to bind the insurance. Signing of this application does not bind the Applicant(s) or the Underwriters to complete the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued, and become part of the policy.
>
> * Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for purposes of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act, and may be subject to civil penalty or fine.

3

The application was signed by Gibson as the "Managing Partner" of G&K on March 23, 2009. Gibson answered "no" to both questions 8(a) and 8(b) in the application indicating that there had been no unreported claims and that no insured was aware of circumstances that could give rise to a claim.

Based on the representations in the application, Colony issued a Lawyers Professional Liability Policy for the period of April 13, 2009 to April 13, 2010. The Policy provides coverage for "claims" for "damages" because of an act, error or omission arising out of insured's "legal services" rendered or that should have been rendered. However the Policy expressly states that there is no duty to defend the insured against any "claim" seeking "damages" for "legal services" to which the insurance does not apply. The policy contains the following prior knowledge exclusion:

> This Policy does not apply to any "claim":
>   a. Based on or directly or indirectly arising from:
>     (1) A "Legal Service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "Legal Service" could give rise to a "claim";

The Insuring Agreement in the Colony policy provides that the policy is issued "in reliance upon the statements in the 'application' (and all attachments and materials submitted therewith)." The "Conditions" section of the policy also includes "Representations" that the insured has provided an accurate "history regarding your losses, 'claims' or incidents which may give rise to 'claims'" and "incidents regardless of whether or not insurance may apply." After warning that the information provided was of "paramount importance" in issuing the Policy, the Policy states:

> You, on behalf of all insureds, warrant the truth of such information as of the effective date of this policy. You declare that you know of no "claim", incident, event, offense or circumstance which has taken place or becomes known prior to the effective date of this policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the "application" or other correspondence which is provided. You understand that if such information is false or misleading, it may limit or void coverage under this policy.

The policy also states that "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured." That section provides in relevant

4

part as follows:

> SECTION II - WHO IS AN INSURED
> 1. The "Named Insured" stated in the Policy Declarations and any "predecessor firm" of the "Named Insured."
> 2. Any person who is or was your partner, officer, member, director, stockholder, of counsel or independent contractor but only for "legal services" rendered on your behalf….

On September 25, 2009, Kuehn notified Colony of a potential legal malpractice claim related to the Adams lawsuit. Kuehn admitted that he failed to timely respond to the summary judgment motion which was entered in July 2008. Colony attempted to contact Kuehn and G&K at least twelve times but was unsuccessful. Kuehn and G&K failed to cooperate in the investigation.

II. Discussion

### A. Legal Standard

A court may grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, Fed. R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Courts will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B. Exclusion as to Kuehn and G&K

A reasonableness requirement in a prior knowledge exclusion is subject to an objective standard. See Weddington v. United Nat. Ins. Co., 2008 WL 590512, 5 (N.D. Cal, 2008) Courts will

enforce the exclusion if (1) if the insured had knowledge of the relevant suit, act, error, or omission and (2) if the suit, act, error, or omission might reasonably be expected to result in a claim or suit. Id. citing Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231 (3d. Cir. 2006).  The exclusion applies regardless of whether the insured actually formed an expectation of a claim, if a reasonable "professional in the insured's position might expect a claim or suit to result." Id. citing Colliers, 458 F.3d at 237.  Where attorney errors led to dismissal of a client's claims, courts may enter summary judgment on the issue of reasonable expectation of a claim.  See, e.g., Westport Ins. Corp. v. Jacobs & Barbone, P.A., 2009 WL 922023 (D.N.J. Mar 31, 2009) (as a matter of law, a reasonable attorney would expect a malpractice claim where attorney failed to file summons, resulting in dismissal of suit).

The Policy excludes claims that are based on legal services rendered prior to the effective date of the policy if any insured knew or could have reasonably foreseen that the legal service rendered could give rise to a claim.  Kuehn and G&K admit that they were in possession of the facts relating Kuehn's conduct in to the Adams lawsuit over a year prior to the issuance of the Policy. Further, there is no genuine dispute that any reasonable professional could expect Kuehn's egregious conduct to result in a claim or lawsuit.  Accordingly, both prongs of the Colliers test are satisfied and the unambiguous language of the Policy excludes coverage for Kuehn and G&K.

C.  Exclusion as to Gibson

The Nevada Supreme Court has held that "an insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." Farmers Ins. Exchange v. Neal, 119 Nev. 62, 64-65 (Nev. 2003) Courts examine the language of a policy "from the perspective of "one not trained in law" and give "plain and ordinary meaning to the terms." Id.  Courts will not rewrite unambiguous language in policies, but any actual ambiguities "are to be resolved in favor of the insured." Id.

6

As previously stated, the Policy excludes any claim from coverage if the claim is based on or arises from legal services rendered prior to the effective date of the Policy "if any insured knew or could have reasonably foreseen that the" legal services could give rise to a claim.

### 1. "Any Insured"

Many courts have held that "[i]n the context of the [prior knowledge exclusions], the words 'any insured' unambiguously preclude coverage for innocent co-insureds." Murphy v. Allied World Assur. Co. (U.S.), Inc., 370 Fed.Appx. 193, 194, (2nd Cir. 2010); see also Ehrgood v. Coregis Ins. Co., 59 F. Supp. 2d 438, 445 (M.D. Pa. 1998) (use of the phrase "any insured" in prior knowledge exclusion coupled with the absence of any limiting language in the exclusion clearly indicated an intent to preclude coverage if "any insured" had prior knowledge of a potential malpractice."); Coregis Ins. Co. v. Lyford, 21 F. Supp. 2d 695, 698-99 (S.D. Tex. 1998) (holding that the policy exclusion "does not concern itself with imputed knowledge; actual knowledge of an impending claim on the part of 'any' insured is what triggers the policy exclusion with respect to all insureds."). Although Nevada law does not directly address the phrase "any insured" in the specific context of prior knowledge exclusions, the Nevada Supreme Court has held that the term "any insured" is not ambiguous and can operate to exclude coverage against all insureds on the policy. Fire Ins. Exchange v. Cornell, 120 Nev. 303, 90 P.3d 978 (2004). A court in this district reached a similar conclusion when interpreting the term "an insured." Allstate Ins. Co. v. Foster, 693 F.Supp. 886 (D. Nev. 1988) ("A" or "an" is an indefinite article often used in the sense of "any" and applied to more than one individual object; whereas "the" is an article which particularizes the subject spoken of.").

Defendant Gibson argues that the term "any insured" is ambiguous since "any" sometimes means "one." In essence, Gibson asks the Court to interpret the term "any insured" to mean "the insured."so that the prior knowledge exclusion would only operate against the insured that had actual knowledge of the claim. This is the same strained interpretation that has been repeatedly rejected by other courts. In the context of a prior knowledge exclusion on a multi-party policy, courts adopt the ordinary definition of "any" as the maximum or whole. The Policy exclusion is written to exclude

7

coverage for "any claim" that "any insured" was aware of, including innocent co-insureds. Here, the Fallini lawsuit asserts the same claim against Gibson, Kuehn, and G&K. It is undisputed that G&K and Kuehn were aware of the potential claim, and accordingly, the Policy excludes coverage for Gibson as well.

### 2. Named Insured

NRS 87.090(1) provides that in a limited partnership, "[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which the partner is a member binds the partnership . . .."

The Fallinis assert that the there is ambiguity in the Policy because the "First Named Insured" as the "Sole Representative" of all named insures is the only insured who could report a potential claim to Colony. According to the Fallinis' reading of the Policy, Gibson is the first named insured and the "Policy provides no expressed bridge between the First Name Insured's knowledge of a potential claim and sole obligation to report that claim within the policy period and a potential claim that 'any insured' knew about or could have reasonably foreseen in order for the prior knowledge exclusion to apply." The Fallinis further assert that Kuehn had no authority to report the claim and that Colony never tried to make contact with Gibson.

The Fallinis' reading of the Policy is mistaken because G&K, not Gibson, is the defined, "Named Insured." Because both Gibson and Kuehn are partners in G&K, either of them has authority to report a claim and either of their knowledge is imputed to G&K. The Fallinis have failed to show a dispute of fact demonstrating an ambiguity in the Policy. Accordingly, coverage for Gibson, Kuehn, and G&K is excluded.

### III.  Conclusion

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgement (#82) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff provide a proposed form of declaratory judgment consistent with this Order within seven days.

DATED this 25th day of September 2012.

_____
Kent J. Dawson
United States District Judge